RICHLAND SCHOOL DISTRICT, Petitioner-Appellant-Cross Respondent-Petitioner,

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, EQUAL RIGHTS DIVISION, Respondent,

James RUDER, Respondent-Cross Appellant.

Supreme Court

*No. 90–1750. Oral argument February 1, 1993.—Decided April 29, 1993.*

(Also reported in — N.W.2d —.)

For the petitioner-appellant-cross respondent-petitioner there were briefs by *Robert W. Burns*, Green Bay, *Kirk D. Strang*, and *Godfrey & Kahn, S.C.*, Madison and oral argument by *Mr. Strang* and *Mr. Burns*.

For the respondent the cause was argued by *Richard Briles Moriarty*, assistant attorney general, with whom on the brief was *Laura Dulski*, assistant attorney general and *James E. Doyle*, attorney general.

For the respondent-cross appellant there was a brief by *Melissa A. Cherney, Kathleen Heiman* and *Wisconsin Education Association Council*, Madison and oral argument by *Ms. Cherney*.

Amicus curiae brief was filed by *John W. Daniels, Jr., Mary Pat Ninneman, Ely A. Leichtling, Carmella A. Huser* and *Quarles & Brady*, Milwaukee for Personnel-Industrial Relations Association, The International Association of Personnel Women, The Association of Hospital Personnel Administrators for Southeastern Wisconsin and the Wisconsin Society of Health Care Human Resources Administration.

Amicus curiae brief was filed by *James B. Sherman* and *Wessels & Pautsch, P.C.*, Milwaukee for MRA-The Management Association.

Amicus curiae brief was filed by *Timothy E. Hawks, Linda S. Quartaro* and *Schneidman, Myers, Dowling &*

*Blumenfield*, Milwaukee for Wisconsin Federation of Teachers.

Amicus curiae brief was filed by *Patrick T. Berigan*, Milwaukee for The Wisconsin Employment Lawyer's Association.

Amicus curiae brief was filed by *Michael J. Julka, Jill Weber Dean, Malina R. Piontek* and *Lathrop & Clark*, Madison for Wisconsin Association of School Boards.

Amicus curiae brief was filed by *Susan Brehm*, staff attorney, Madison for Center for Public Representation.

Amicus curiae brief was filed by *Thomas W. Scrivner, Scott C. Beightol* and *Michael, Best & Friedrich*, Milwaukee for Wisconsin Association of Manufacturers & Commerce.

Amicus curiae brief was filed by *Betsy J. Abramson*, staff attorney, Madison for Elder Law Center of the Coalition of Wisconsin Aging Groups.

SHIRLEY S. ABRAHAMSON, J. This is a review of a published decision of the court of appeals, *Richland School District v. DILHR*, 166 Wis. 2d 262, 479 N.W.2d 579 (Ct. App. 1991), which affirmed a judgment of the Circuit Court for Richland County, William L. Reinecke, Circuit Judge.

The circuit court affirmed a make-whole order of the Department of Industry, Labor and Human Relations (DILHR) in favor of James Ruder against his employer, the Richland School District. DILHR concluded that the school district had erred in refusing to allow Ruder to substitute paid leave, accumulated under his union's collective bargaining agreement with the school district, for unpaid leave to which he was entitled under the Wisconsin Family and Medical Leave Act

(FMLA), sec. 103.10, Stats. 1989–90. DILHR also ordered the school district to pay Ruder $3,075.00 for attorney fees and costs incurred during the administrative proceedings under FMLA, sec. 103.10(12)(d), Stats. 1989–90. The circuit court affirmed both parts of DILHR's order, and the court of appeals affirmed the judgment of the circuit court.

The circuit court refused to award Ruder reimbursement for attorney fees which he incurred in the circuit court for chapter 227 judicial review of DILHR's order. The court of appeals reversed the circuit court on this issue, directing the circuit court to determine and award to Ruder reasonable actual attorney fees for his representation in the circuit court and on appeal to the court of appeals.

For the reasons set forth below, we conclude, as did DILHR, the circuit court and the court of appeals, that Ruder is entitled to substitute the paid leave he accumulated under the collective bargaining agreement for unpaid family leave pursuant to sec. 103.10. We further conclude, as did the court of appeals, that Ruder may be reimbursed under sec. 103.10(12)(d), Stats. 1989–90, for the reasonable actual attorney fees he incurred in the circuit court, court of appeals and supreme court for judicial review of the DILHR order, as well as in the proceedings before DILHR. Accordingly, we affirm the decision of the court of appeals.

This case presents two issues on appeal: The first issue is whether sec. 103.10(5)(b), Stats. 1989–90, allows an employe to substitute paid leave accumulated under a collective bargaining agreement for unpaid family leave authorized by FMLA, when the employe has not met the conditions of leave eligibility set forth in the collective bargaining agreement. The second issue on appeal involves reimbursement of attorney fees and raises four

questions. Did DILHR properly exercise its discretion in reimbursing the employe for attorney fees incurred at the administrative agency level? Does sec. 103.10(12)(d) authorize reimbursement of attorney fees incurred in a judicial review of a DILHR order? If an employe may be awarded attorney fees incurred in a chapter 227 judicial review of DILHR's order, do attorney fees for which the employe has incurred no personal liability constitute reasonable actual attorney fees under sec. 103.10(12)(d)? Should an employe be denied attorney fees beyond the agency level when his or her interests are represented in the courts by the administrative agency?

## I.

The facts are stipulated for purposes of this appeal. James Ruder is a teacher employed by the Richland School District. The school district and the Richland Center Education Association have negotiated a collective bargaining agreement which governs the conditions of Ruder's employment. Article IX of that agreement, entitled "Leaves of Absence," provides that each certificated employe (teacher) "shall be granted 10 days of reimbursable leave each year accumulative to a maximum of 120 days." Certificated employes are credited with the 10 days of reimbursable leave for each school year on the first day of the inservice of that school year. Reimbursable leave is granted in cases of serious illness or injury to the teacher or a member of the teacher's immediate family; death of an immediate family member; court appearances; or "other unavoidable circumstances." The collective bargaining agreement does not provide for paid leave when a child is adopted. In the event that an employe exhausts all accumulated reimbursable leave, any additional leave taken by the employe is deducted from the employe's salary. When a

teacher leaves the employ of the school district, all rights to accumulated reimbursable leave are terminated without compensation.

Ruder had accumulated 18 days of reimbursable leave under the collective bargaining agreement. On April 26 and again on May 8, 1989, after learning that a child would be placed with his family for adoption, Ruder requested five days of accumulated reimbursable leave to be used upon the child's arrival. Specifically, Ruder asked the school district that he be allowed to substitute, under 103.10(5)(b) of FMLA, five days of reimbursable leave accumulated under the collective bargaining agreement for the unpaid adoption leave provided by sec. 103.10(3)(b).[1]

Section 103.10(5)(b) allows an employe to substitute, for portions of unpaid family leave, paid or unpaid leave of any other type provided by the employer. Sections 103.10(5)(a) and (b) provide as follows:

> Section 103.10(5). PAYMENT FOR AND RESTRICTIONS UPON LEAVE.
>
> (a) This section does not entitle an employe to receive wages or salary while taking family leave or medical leave.
>
> (b) An employe may substitute, for portions of family leave or medical leave, paid or unpaid leave of any other type provided by the employer.

The school district granted Ruder five days of unpaid leave but refused his request to substitute, under sec. 103.10(5)(b), reimbursable leave accumulated under

---

[1] Section 103.10(3)(b), Stats., provides, in relevant part:

(b) An employe may take family leave for any of the following reasons: . . .

2. The placement of a child with the employe for adoption or as precondition to adoption under s. 48.90(2), but not both, if the leave begins within 16 weeks of the child's placement.

the collective bargaining agreement for the unpaid statutory family leave available under sec. 103.10. Ruder filed a complaint with DILHR, alleging a violation of FMLA.

The circuit court and the court of appeals affirmed DILHR's order that the school district had violated sec. 103.10(5)(b) by refusing the substitution of leave and that Ruder be awarded reasonable attorney fees under sec. 103.10(5)(d) for his representation at the DILHR hearing. The circuit court concluded that Ruder was not entitled to reimbursement of attorney fees incurred in the circuit court; the court of appeals concluded he was entitled to attorney fees incurred in the judicial proceedings.

## II.

The first issue is whether sec. 103.10(5)(b) permits an employe to substitute paid leave accumulated under a collective bargaining agreement for FMLA leave when the employe does not meet all the conditions of leave eligibility set forth in the collective bargaining agreement. The school district argues that substitution under sec. 103.10(5)(b) may only occur when the employe satisfies the conditions of leave eligibility expressly set forth in the collective bargaining agreement.

## A.

Even though the case is before us on review of the decision of the court of appeals, we are in reality reviewing DILHR's order interpreting sec. 103.10(5)(b). Therefore we first consider the standard of review. The interpretation of a statute presents a question of law, and the "blackletter" rule is that a court is not bound by an agency's interpretation. Courts, however, give varying degrees of deference to agency interpretations of statutes

and frequently refrain from substituting their interpretation for that of the agency charged with administration of the law. *West Bend Educ. Assn v. WERC*, 121 Wis. 2d 1, 11-12, 357 N.W.2d 534 (1984).

This court has discussed the standard of review for DILHR's orders in two FMLA cases. In *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 245-46, 493 N.W.2d 68 (1992), we concluded that the case presented a question of law of first impression in which the proper standard of review is "*de novo.*"

In still another case involving FMLA, *Jicha v. DILHR*, 169 Wis. 2d 284, 292-93, 485 N.W.2d 256 (1992), this court concluded that a hearing examiner's decisions are governed by the same standard of review as governs a DILHR decision.[2] The hearing examiner's (characterized as DILHR's) interpretation of the statute of limitations provision in FMLA was accorded "great weight" by the *Jicha* court on two grounds. First, the court concluded that DILHR had gained experience and expertise by engaging in the rule-making process for FMLA.[3] (The *Jicha* court referred only to the rule-making process generally and did not examine the rule-making process in which DILHR had engaged in adopting the rule on the statute of limitations.) Second, the court concluded that DILHR had gained experience and expertise by interpreting a comparable statute of limitations provision in a closely analogous statute.

As in *Jicha*, DILHR has promulgated rules interpreting the statutory provision at issue in the case, *see*

---

[2] For an earlier contrary view, see *MPI Wisconsin Machining Div. v. DILHR*, 159 Wis. 2d 358, 464 N.W.2d 79 (Ct. App. 1990).

[3] Section 227.20(10), Stats. 1990-91, provides that upon review of an agency's determination, "due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved . . .."

Wis. Adm. Code Ind. 86.03(1), and has developed, through the rule-making process, a degree of experience and expertise which entitles its decisions to some deference. In contrast to the situation in *Jicha,* however, DILHR has not had extensive experience interpreting a statute analogous to the one at issue in this case. Because of DILHR's experience in the rule-making process, we conclude this case is more akin to *Jicha* than to *Kelley,* and we therefore give DILHR's interpretation of the statute great weight.

DILHR engaged in extensive rule-making proceedings before promulgation of its final rules. It held several hearings around the state. It received numerous comments about its draft rules, including comments about the central issue in this case.[4] Furthermore, the interaction with the legislature required by the rule-making process gave DILHR assurance that its rules reflected the legislature's understanding of the statute's provisions. Secs. 227.15, 227.19, 227.26, Stats. 1991–92.

DILHR's final *draft* rules interpreted FMLA as the school district advocates here. The draft rule, Ind. 86.03(1), provided that "[a]t the option of the employe, an employe entitled to family or medical leave under the act may substitute, for any leave requested under the act, any other paid or unpaid leave for which the employe is eligible so long as the employe has met all requirements entitling that employe to that leave."[5]

---

[4] See File, Clearinghouse Rule Senate 88–122, on file with the State Historical Society, Madison, Wis.

[5] In proceedings before the hearing examiner the school district relied on this draft rule. Ruder argued to the hearing examiner that the draft rule had been returned to DILHR with the recommendation that the rule be changed to reflect the language of the statute and asked the hearing examiner to take administrative notice of the status of the rule. Ruder also argued that the

The legislative committees reviewing DILHR's draft rules pursuant to sec. 227.19, Stats. 1990-91, recommended to the Equal Rights Division of DILHR, *inter alia,* that the draft administrative rule on sec. 103.10(5)(b) be modified to allow the substitution of any leave that the employe had accrued. DILHR Secretary Gerald Whitburn subsequently wrote to the chairs of the legislative committees, advising them that DILHR had carefully reviewed their written comments on the draft rules. Although he did not accept some of the legislators' recommendations, Mr. Whitburn concluded that the legislators' recommended revision to allow an employe to substitute leave which has accrued to the employe was necessary for the rules to conform to the statute. Mr. Whitburn wrote: ". . .the statutory language appears to leave the Department with no alternative except to adopt this suggested modification."[6] DILHR's change of

draft rule was inconsistent with the statute. The hearing examiner stated that he based his decision of September 8, 1989, in favor of Ruder, on Ruder's brief and arguments.

The school district asserts that pursuant to sec. 227.57(8) we should reverse the hearing examiner's decision because the hearing examiner's interpretation was contrary to DILHR's draft rules. Section 227.57(8) provides that "the court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is . . . inconsistent with an agency rule . . . if deviation therefrom is not explained to the satisfaction of the court by the agency . . .." We do not view the draft rule in this case as an agency rule within sec. 227.57(8). The draft rule was a proposal, and it does not have the force and effect of an adopted rule. Furthermore, the hearing examiner explained his deviation from the draft rule.

[6] On August 23, 1989, DILHR Secretary Gerald Whitburn wrote:

"Under the suggested revision, an employe who is not sick but who has accrued sick leave could substitute that accrued sick leave for

position reflects a conclusion, reached after careful study, that sec. 103.10(5)(b) requires a covered employer to allow an employe entitled to leave under FMLA to substitute accrued employer-provided leave without regard to whether all conditions of leave eligibility for the employer-provided leave had been met. DILHR asserts that since the adoption of the final rule, the hearing examiners have consistently applied sec. 103.10(5)(b) according to the rule.

We conclude that this rule-making procedure demonstrates that DILHR has gained experience and expertise in interpreting the substitution provision. Accordingly, we apply the "great weight" standard under which the reviewing court will defer to the agency's interpretation of a statute if its interpretation is reasonable, although an alternative interpretation may also be reasonable. *West Bend Educ. Assn v. WERC*, 121 Wis. 2d 1, 13–14, 357 N.W.2d 534 (1984). The hearing examiner interpreted sec. 103.10(5)(b) in this case in accordance with the final rule. We find that DILHR's interpretation of sec. 103.10(5)(b) is reasonable. It is supported by the language of the statute and the legislative history. None of the school district's arguments convinces us otherwise.

---

family leave based on the birth of a child . . . it essentially would transform an unpaid statutory leave into one that is paid. An employe who is taking family leave, for example, and who is not sick can get paid through the employer's sick leave policy at the same time that an employe not then entitled to take statutory family leave who is also suffering no illness cannot. This has the actual result of allowing similarly situated employes to be treated differently as to whether they are paid for leave based solely upon whether an employe is then taking "unpaid" family leave under the Act. *Nonetheless, the statutory language appears to leave the Department with no alternative except to adopt this suggested modification.*" (Emphasis added.)

We hasten to add, however, that whether we accord DILHR's interpretation of the statute deference or decide the issue *de novo,* our conclusion would be the same. We agree with the court of appeals (which reviewed DILHR's decision *de novo*) that DILHR interpreted the statute correctly.

## B.

We begin our analysis of sec. 103.10(5) with the language of the governing statutory provisions. Section 103.10(5)(a) clarifies that taking a leave under FMLA does not entitle an employe to wages or salary. If the employe is to receive wages or salary while on FMLA leave, the authorization for such compensation must come from a source other than FMLA.

Under sec. 103.10(5)(b), "[a]n employe may substitute . . . paid or unpaid leave of any other type provided by the employer" for the statutory leave provided by FMLA. The only statutory requirement for substitution is that there must be some type of "leave . . . provided by the employer." When the employer provides leave, the statute does not restrict or limit the employe's power of substitution; the decision to substitute is left to the employe's discretion. Nor does the statute state that the employe's right to substitute is limited by the terms of a collective bargaining agreement.

We accept Ruder's and DILHR's contention that the phrase "leave . . . provided by the employer" refers to any type of leave that has *accrued* to the employe. Section Ind. 86.03, Wis. Adm. Code.[7] Only those types of leave which an employment contract allows an employe

---

[7] The Administrative Code provides:

to accumulate over time are available for substitution. Leave which is indefinite or which cannot be quantified at the time of the FMLA leave request is not "leave . . . provided by the employer" under FMLA. Such indefinite, incalculable leave is distinguishable from the leave in this case, which accrues into specified, calculable amounts of time. The parties agree that the collective bargaining agreement gave Ruder 18 days of accumulated paid leave. He requested authorization to substitute five of those days for the unpaid leave to which he was entitled under FMLA. He was not asking to substitute any form of non-accrued, discretionary or contingent leave time which the school district might give him upon request.

The school district argues that the statutory phrase "leave . . . provided by the employer" applies only to leave to which the employe is entitled, because the employee has met the conditions of leave eligibility set forth under the collective bargaining agreement. Although Ruder had accumulated 18 days of reimbursable leave, he had not met any of the conditions for leave under the collective bargaining agreement. The school district argues that consequently no leave was provided by the employer and Ruder had nothing to substitute for the adoption leave to which he was entitled under FMLA.[8]

---

"Ind. 86.03 Substituting Leave. (1)   At the option of the employe, an employe entitled to family or medical leave under the act may substitute, for any leave requested under act, *any other paid or unpaid leave which has accrued to the employe.*" (Emphasis added.)

[8] The school district points to legislative history to support its interpretation. It asserts that an additional subsection, sec. 103.10(5)(c), which was deleted in the 1987–88 Legislature, Conference Substitute Amendment 1 to 1987 Senate Bill 235, provided that "in addition to family leave or medical leave under this section, an employee may take any other paid or unpaid leave

The statute simply does not say what the school district asserts. Had the legislature intended that substitution require the employe to meet the conditions of leave eligibility set forth in the collective bargaining agreement, it could have expressly said so. The legislative history seems to confirm DILHR's interpretation, rather than the school district's. As originally drafted, sec. 103.10(5)(a) would have completely prohibited the employe from receiving wages or salary from *any* source during the employe's statutory leave. Section 103.10(5) was modified to allow pay during statutory leave on the taking of employer-provided leave. This change suggests that the purpose of the substitution provision was to provide a source of income for employes who must take time from their work for family or medical reasons.[9]

---

provided by the employer, except other leave under this section, for the reasons described in sub. (3)(b) or (4)(a)." The school district argues that this provision would have guaranteed precisely the substitution of leave requested by Ruder in the present case and that its deletion from the final version of FMLA is evidence that the substitution Ruder seeks was expressly rejected. We disagree with the school district. It is equally likely and reasonable that 103.10(5)(c) was removed as unnecessary because such substitution was included in sec. 103.10(5)(b).

[9] According to the legislative history, a January 27, 1987, memorandum from Dave Cieslewicz of Senator John Plewa's office to Jeffrey Shampo regarding redrafts of the family leave bill states that ". . . the draft says that no employe may receive wages or salary while taking family or medical leave. We want to allow employers to give wages and salary if they chose [sic] to. This language seems to prohibit any kind of wage or salary during leaves."

In Engrossed 1987 Senate Bill 235, November 16, 1987 section 5(a) was revised to read "this section does not entitle an employe to receive wages or salary while taking family leave . . ."

Accordingly, we conclude, as did DILHR, the circuit court and the court of appeals, that sec. 103.10(5)(b) does not require that the employe satisfy the conditions of leave eligibility set forth in the collective bargaining agreement before substitution is allowed. The United States District Court for the Western District of Wisconsin similarly concluded that "the plain language of the [FMLA] statute is that if an employer provides sick leave, an employe may substitute that leave for family leave." *Leher v. Consolidated Papers, Inc.*, 786 F. Supp. 1480, 1485 (W.D. Wis. 1992).

Furthermore, under the school district's interpretation, there would have been no reason for the legislature to authorize employes to substitute employer-provided leave. At oral argument the school district was unable to provide an example of when sec. 103.10(5)(b) would be necessary if we adopted its interpretation that employes could substitute only leave for which they satisfied the conditions of leave eligibility set forth in collective bargaining agreements. The school district's brief suggests one example: An employe who had earned paid vacation time might request paid vacation while taking statutory FMLA leave. Unless the statute included the substitution clause, the school district argues, an employer could simply refuse such an employe's request for paid vacation leave.

An early version of the subsection had read: "No employe may receive wages or salary while taking family leave or medical leave." Thus the drafters moved from prohibiting an employe from receiving any pay whatsoever while on family leave to not entitling an employe to pay. The purpose of this section was to guarantee that nothing in the FMLA could be construed as prohibiting the employer from providing rights to family or medical leave which were more favorable to the employe than those provided by the FMLA.

Ruder responds that the school district's example is flawed, and we agree with Ruder. In the school district's example the employe was not entitled to the paid vacation leave because the requirement of having the employer's permission had not been met. Thus, under the school district's interpretation of the statute, the employe could not substitute the paid vacation leave for FMLA leave. If the employe had met all the conditions of vacation leave eligibility, including the employer's permission, the employe could take the leave, regardless of sec. 103.10(5)(b). Thus the school district's own example demonstrates that under its interpretation of sec. 103.10(5)(b), the section would largely be surplusage. To have meaning, sec. 103.10(5)(b) must be construed as extending substitution rights to employer-provided leave which the employe could not demand through rights independent of FMLA.

The amicus curiae brief of MRA-The Management Association contains an analysis of the substitution issues different from the analyses presented by the parties. MRA contends that the substitution provision is not surplusage if confined to employer-provided leave for which an employe is otherwise eligible, because employes substituting employer-provided leave receive both the employer-provided leave and the statutory protections of FMLA.[10] This argument gives us pause, but after considering the argument in light of the FMLA's statutory language and legislative history, we agree with DILHR

---

[10] MRA cites the following benefits for employees who take FMLA leave:

(1) the employer maintains group health benefits during the leave, sec. 103.10(9)(b);

(2) the employe has the right to "immediate reinstatement" upon return from that leave, sec. 103.10(8);

(3) the employe has the right to cut the FMLA leave short and still be reinstated, sec. 103.10(8)(c);

that the legislature did not intend the substitution provision to accomplish so little.

The breadth and sweep of sec. 103.10(5)(b) in allowing substitution of "any other type of leave" is made clear by comparing it with its counterpart in the 1986 proposed federal family leave act, H.R. 4300, upon which FMLA was modelled. Two versions of H.R. 4300 appear in the legislative drafting files for 1987 Act 287, which became FMLA. The first contained a substitution clause permitting an employe or employer to substitute "paid vacation leave, sick leave, or other appropriate paid leave" for statutory leave. The second version limited substitution to "any of the employee's paid vacation leave, personal leave or family leave." (H.R. 4300, 99th Cong., 2d Sess., sec. 103. (1986)). The Wisconsin legisla-

(4) the employe has the right to a "substantially equivalent position" if the employee's position was gone upon return, sec. 103.10 (8)(a)(2);

(5) the employe has protection from any discrimination on account of taking the leave, sec. 103.10(11)(a);

(6) the employe has protection from reduction or denial of an employment benefit which accrued to the employee, sec. 103.10(8)(b);

(7) the employe has the right to *refrain* from substituting employer-provided leave for statutory leave, sec. 103.10(5)(b), Wis. Adm. Code sec. Ind. 86.03(3).

MRA's argument turns on the meaning of the word "substitute," and the interpretation of the word is not before us.

MRA asserts that the word "substitute" literally means that employes utilizing sec. 109.10(5) could use employer-provided leave only, without using any FMLA leave. MRA argues that the word substitute should not be interpreted literally, because, in fact, an employe who meets all the conditions of employer-provided leave but then "substitutes" that leave for FMLA leave combines benefits from the employer with all the FMLA benefits which were designed to protect an employe while on FMLA leave.

ture rejected the restrictive language in both versions of the proposed federal act and chose instead to use the phrase "any other type of leave." The legislature clearly intended substitution to apply not just to the types of leave to which the employe was already entitled, such as vacation, personal leave, or leave granted for the same purpose as granted by FMLA, but to *any leave.* The school district's narrow interpretation of sec. 103.10(5)(b) conflicts with the broad language of the statute.

Furthermore, the school district's interpretation contravenes the legislature's apparent purpose in incorporating substitution in FMLA. Section 103.10(5)(b) was intended to make the employe eligible for paid leave if any was provided by the employer.[11] In FMLA, the legislature has carefully balanced the public policy interests in providing employes with family and personal leave and in helping employers maintain a stable work force. The legislature has acknowledged that some employers might provide paid leave time, might allow leave time to be accrued into fixed periods of time, and yet might fail to provide sufficient leave for family and medical purposes. Through sec. 103.10(5)(b), the legislature has made it possible for employes to draw down on their leave accounts during FMLA leave, without imposing unanticipated costs on the employer. Thus, while stopping short of requiring paid leave for family and medical purposes, the legislature has made the following policy decision: If an employer already provides other types of paid leave, employes may substitute that leave for unpaid leave under FMLA. In keeping with this pol-

---

[11] See note 9, *supra.*

icy we conclude that DILHR's interpretation of sec. 103.10(5)(b) is reasonable.

Although the focus of this dispute is sec. 103.10(5)(b), the school district centers most of its argument in this court on sec. 103.10(9)(a), which provides that an employe returning from FMLA leave should not be entitled to a right, employment benefit, or employment position to which the employe would not have been entitled had he or she not taken family leave or medical leave. The section further provides that nothing entitles an employe to the accrual of seniority or employment benefit during a period of family or medical leave.[12] According to the school district, this section makes clear that FMLA does not create an entitlement to compensation through leave substitution. Since compensated leave time is a benefit, according to the school district, employes cannot assert a right through FMLA to compensated leave for which they are not otherwise eligible under the employment contract.

We are not persuaded by this strained interpretation of sec. 103.10(9)(a). We agree with DILHR's and Ruder's response that sec. 103.10(9)(a) addresses the rights of employes returning from FMLA leave and is not intended to control the rights of persons wishing to substitute employer-provided leave for FMLA leave. The school district argues that sec. 103.10(9)(a) cannot be limited to employes who are returning to work because sec. 103.10(9)(b) requires an employer to maintain group

---

[12] Section 103.10(9)(a) provides:

"Except as in provided par. (b), nothing in this section entitles a returning employe to a right, employment benefit or employment position to which the employe would not have been entitled had he or she not taken family leave or medical leave or to the accrual of any seniority or employment benefit during a period of family or medical leave."

health insurance coverage for its employes during the employes' FMLA leaves. It further contends that sec. 103.10(9)(a) disclaims the creation of employe rights during a leave, and that it is sec. 103.10(8)(b) which addresses an employe's position with respect to leave benefits upon returning to work.

We see nothing inconsistent in interpreting both sec. 103.10(8)(b) and sec. 103.10(9)(a) as addressing the rights of an employe returning from FMLA leave, and sec. 103.10(9)(b) as addressing the obligations of an employer to maintain the group health insurance coverage rights of an employe during FMLA leave. The legislature obviously intended sec. 103.10(9)(b) to ensure that employers would pay employes' group health insurance premiums during the FMLA leave period. Yet, if the legislature had meant sec. 103.10(9)(a) to control the rights of employes during FMLA leave, as the school district contends, it would not have used the limiting term "returning employes." We can find no support for the school district's argument that an employe's substitution rights, granted in sec. 103.10(5)(b), are limited by sec. 103.10(9)(a) or sec. 103.10(8)(b).

The school district also argues that DILHR's interpretation of sec. 103.10(5)(b) would impose additional costs on state and local government employers and that the legislature did not intend that such additional costs be incurred. Thus, concludes the school district, DILHR's interpretation of the statutory language differs from the legislature's. The school district rests this argument on its reading of fiscal estimates prepared for the legislature by DILHR, the Department of Employment Relations, and the Personnel Commission. The school district misreads DILHR's fiscal estimate. DILHR checked the box on its fiscal estimate stating that FMLA

would create "no local government costs." The school district contends that since the legislature was advised that FMLA imposed no costs on local government entities, any interpretation resulting in the imposition of costs on local government is flawed.

We agree with Ruder's rebuttal that the school district relies on an inapplicable fiscal estimate. The purpose of DILHR's May 2, 1987, fiscal estimate was to assess the costs of enforcing FMLA. Thus no other costs were estimated. A second fiscal estimate by the Department of Employment Relations, dated June 9, 1987, states that "this estimate is limited to state costs only, and does not reflect any cost impact on local government units." We read the two fiscal estimates as saying that the local government costs are not addressed, rather than as saying that no local government costs will exist.

The June 9, 1987, Department of Employment Relations' fiscal estimate addresses the potential increased costs that would be incurred by the state in providing leave to its employes, when it relates that "the State currently has similar provisions for family and medical leave in place, so there is no basis to predict that this bill will increase the number of leaves taken for either family or medical leave."

We agree with Ruder that DILHR's interpretation of sec. 103.10(5)(b) does not contradict the estimates of FMLA's fiscal impact on the state. The FMLA substitution provision increases the opportunities for a state employe to use existing accrued paid leave, as opposed to creating additional paid leave, and the State of Wisconsin allows payback or conversion of unused leave pay. Thus it would be difficult to predict an increase in the state's costs in complying with FMLA's substitution provision.

Finally, the school district asserts that DILHR's interpretation of sec. 103.10(5)(b) contradicts sec. 103.10(5)(a), thereby rendering sec. 103.10(5) unconstitutionally vague. The school district contends that if sec. 103.10(5)(b) plainly and unambiguously supplies a right to receive paid leave, which is a form of compensation, then sec. 103.10(5)(b) entitles an employe to receive wages or salary in direct conflict with sec. 103.10(5)(a).

The constitutional "void for vagueness" doctrine is grounded in the due process guarantee of the Fourteenth Amendment to the United States Constitution. This court has said that "unless a statute is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty, it is valid." *Williams v. Hofmann,* 66 Wis. 2d 145, 153, 223 N.W.2d 844 (1974). The burden is on the school district to prove the statute's unconstitutionality beyond a reasonable doubt. *State ex. rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973).

We conclude that the legislative intent in sec. 103.10(5) can be determined with reasonable certainty. We interpret sec. 103.10(5)(b) as restricting substitution under FMLA to circumstances in which the employe has accrued reimbursable leave. This interpretation does not conflict with the admonition in sec. 103.10(5)(a) that an employe is not entitled to receive wages or salary while taking FMLA leave. We conclude that the school district has not proved unconstitutionality beyond a reasonable doubt.

The court of appeals concluded that the collective bargaining agreement could be harmonized with the substitution provisions of FMLA. We agree with the court

of appeals. In *Glendale Prof. Policemen's Assn v. Glendale*, 83 Wis. 2d 90, 264 N.W.2d 594 (1978), the court concluded that, when possible, collective bargaining agreements and statutes governing conditions of employment must be harmonized. However, "[w]hen an irreconcilable conflict exists . . . the collective bargaining agreement should *not* be interpreted to authorize a violation of law." *Glendale*, 83 Wis. 2d at 106.

As the court of appeals observed, the collective bargaining agreement in this case allows the school district to grant a request for reimbursable leave in cases of serious illness or injury, death in the immediate family, or ". . . for other unavoidable circumstances." In other words, the collective bargaining agreement does not expressly preclude use of reimbursable leave for adoption purposes. There is no irreconcilable conflict between the agreement and FMLA. Even if there were a conflict between the collective bargaining agreement and FMLA, the latter would prevail.

Furthermore, the bargaining agreement which covered Ruder at the time he requested leave in April and May of 1989 became effective after FMLA was enacted. The school district apparently had opportunity to incorporate provisions into its collective bargaining agreement which would anticipate the effects of sec. 103.10(5)(b).

Thus we adopt the position of the court of appeals that sec. 103.10(5)(b) "expands the circumstances under which [employer provided reimbursable leave] can be used." *Richland School Dist.*, 166 Wis. 2d at 279.

### III.

The second issue we address is the availability of attorney fees under FMLA. This issue raises four ques-

tions. Did DILHR properly exercise its discretion in reimbursing Ruder for attorney fees incurred at the administrative agency level? Does sec. 103.10(12)(d) authorize reimbursement of attorney fees incurred in judicial review of DILHR's order? If an employe may be awarded attorney fees incurred in judicial review of DILHR's order, do attorney fees for which the employe has incurred no personal liability constitute reasonable actual attorney fees under sec. 103.10(12)(d)? Should an employe be denied attorney fees beyond the agency level because his interests were represented in the courts by DILHR?

We hold that the awards of attorney fees for both the DILHR and judicial review proceedings are appropriate under sec. 103.10(12)(d), and we affirm the decision of the court of appeals.

Section 103.10(12)(d), Stats. 1989-90, makes awards of attorney fees available under FMLA and explicitly anticipates awarding reasonable actual attorney fees to successful complainants. It provides in part as follows:

> Section 103.10(12)(d). If the department finds that an employer violated sub. (11)(a) or (b), it may order the employer to take action to remedy the violation, including . . . paying reasonable actual attorney fees to the complainant.

The school district makes four arguments in an effort to deny Ruder an award of fees at both the agency level and for the chapter 227 judicial review proceedings. First the school district argues that the statute grants DILHR discretion to award attorney fees but that the hearing examiner failed to exercise that discretion appropriately when he declined to explain why he was

awarding Ruder attorney fees.[13] In support of this argument the school district cites the hearing examiner's decision, which reads as follows: "[R]ather than reiterate the arguments and citation in support of the Complainant [Ruder], the [hearing examiner] . . . agrees with the position of the Complainant and has accepted the brief and the reply brief of the Complainant in support of his decision."

We conclude, as did the court of appeals, that because the hearing examiner expressly relied on Ruder's briefs and incorporated them by reference, we may look to the briefs for the hearing examiner's reasons. *Hagenkord v. State*, 100 Wis. 2d 452, 464, 302 N.W.2d 421 (1981) (no abuse of discretion where circuit court acquiesced in the prosecutor's explanation). As the court of appeals observed, Ruder's briefs in the DILHR proceedings relied on the rationale expressed by the court in *Watkins v. LIRC*, 117 Wis. 2d 753, 345 N.W.2d 482 (1984), to support his claim for attorney fees. Reviewing an action for attorney fees under the Wisconsin Fair Employment Act, secs. 111.31–111.395, Stats. 1981–82, the *Watkins* court held that an award of attorney fees was needed to make complainants whole, to discourage discriminatory practices in employment, and to put victims in an economic position that made it possible for them to advance both their individual interest and the public's interest in ensuring that statutory violations were discovered and remedied. We hold that this rationale constitutes a sufficient basis for the hearing exam-

---

[13] Section 227.57(8), Stats. 1989–90, provides:

"The court shall reverse or remand the case to the agency if it finds that the agency's exercise of discretion is outside the range of discretion delegated to the agency by law . . ."

iner's decision and that, accordingly, DILHR did not erroneously exercise its discretion.

The school district next argues that because sec. 103.10(12)(d) expressly mentions only DILHR's discretion to order payment of attorney fees to a successful complainant, the statute does not authorize an award for attorney fees incurred during the judicial review proceedings. The school district contends that the "American rule" bars awarding attorney fees to a prevailing party absent express statutory authorization.

The school district's interpretation of sec. 103.10(12)(d) is contrary to the principles set forth in our cases interpreting analogous statutory provisions which grant attorney fees to a prevailing party. In the *Watkins* case, 117 Wis. 2d 753, an employe brought a proceeding against her employer alleging racial discrimination under the Wisconsin Fair Employment Act, a statute substantially similar to FMLA. That statute, sec. 111.36(3)(b), provided that *"the department . . . make written findings and order such action* by the respondent as will effectuate the purpose of this subchapter . . .." (emphasis added). While the statute did not expressly authorize attorney fees, the court held that sec. 111.36(3)(b) empowered the department to award attorney fees to a prevailing complainant. As in the case at bar, the statute in *Watkins* addressed *the department's* power. Nevertheless, the *Watkins* court concluded that the complainant was entitled to attorney fees incurred in the chapter 227 judicial review of the agency decision.

Other cases support our rejection of the school district's position. In *Shands v. Castrovinci*, 115 Wis. 2d 352, 357-58, 340 N.W.2d 506 (1983), a tenant sought to enforce her rights to damages and fees when her landlord failed to return her security deposit promptly. The governing statute, sec. 100.20(5), provided that "any person

suffering pecuniary loss . . . may sue for damages therefor in any court of competent jurisdiction and shall recover twice the amount of such pecuniary loss, together with costs, including a reasonable attorney's fee." Read narrowly, this statute seems to address attorney fees at the trial court level. The *Shands* court held, however, that the statute authorized an award of attorney fees for representation at appellate proceedings. The court stated that "[t]o permit the recovery of attorney fees for successful appellate work is simply to recognize that an attorney's effort at that stage is as essential to the tenant's success as is an attorney's work at the trial court level." *Id.* at 359.

In *Siegel v. Leer, Inc.*, 156 Wis. 2d 621, 632, 457 N.W.2d 533 (Ct. App. 1990), the applicable statute, sec. 135.065, was similar to the statute in *Shands*. It allowed a dealer of goods or services whose business was harmed by a trading partner to bring an "action . . . in any court of competent jurisdiction for damages . . . together with the actual costs of the action, including reasonable actual attorney fees . . .." The losing party challenged the prevailing party's right to appellate attorney fees, arguing that the statute authorized attorney fees only in the action before the circuit court. The court of appeals concluded that the legislature intended "action" to include the defense of a favorable circuit court decision or the prosecution of an adverse decision in an appellate forum. To be made whole, as the statute intended, the prevailing party must be able to recover damages and attorney fees on appeal. Otherwise, the court concluded, the purpose behind the statute could be frustrated by the other party taking an expedient appeal.

The statute at issue in *Sheely v. DHSS*, 150 Wis. 2d 320, 442 N.W.2d 1 (1989), addressed costs at the administrative agency and at the circuit court but not on

review to the appellate courts. The *Sheely* court concluded that to fulfill the legislative purpose, the prevailing party should be awarded costs, including reasonable attorney fees, for proceedings in the appellate courts. *Id.* at 340.

In accordance with these cases holding that a statute authorizing recovery of fees at either an administrative proceeding or a court proceeding includes recovery of attorney fees on appeal, we conclude that Ruder may recover attorney fees for all three court proceedings.

The school district's third argument is that the statutory language "reasonable actual attorney fees" precludes awards of attorney fees to a prevailing party who is represented without charge. The Wisconsin Education Association Council provided an attorney for Ruder without charge in the proceedings before the department, on the chapter 227 review in circuit court and on his appeal. Therefore, the school district contends, this court's concern that the complainant be "made whole" does not apply in the present case.

Ruder argues that once the right to fees is established, the complainant should be entitled to fees in defending the decision on appeal even if the complainant is not personally liable for fees. The court of appeals accepted this argument, relying in part on *Martineau v. State Conservation Committee*, 54 Wis. 2d 76, 194 N.W.2d 664 (1972), and *Esch v. Yazoo Mfg. Co., Inc.*, 510 F. Supp 53 (E.D. Wis. 1981).

In *Martineau*, the court interpreted two attorney fees statutes. Section 32.06(9)(a), Stats. 1971, provided that a condemnee in an eminent domain action could obtain a "reasonable attorney's fee" if the condemnor abandoned the proceedings. Section 32.17(3), Stats. 1971, allowed recovery from the state of costs and dis-

bursements including "reasonable attorney's fees" in case of abandonment of condemnation proceedings. The state argued in *Martineau*, as the school district argues in this case, that, since Martineau had a contingent fee contract and incurred no attorney fees, the state should not be assessed fees which Martineau was not legally required to pay. The court rejected this contention, stating that "the nature of the fee agreement between appellant and her attorney has no bearing on this case." *Id.* at 81. Thus, although the court denied fees on other grounds, the court did not interpret the statutory language "reasonable attorney's fee" or "reasonable actual attorney's fees" to preclude an award of attorney fees when the client had no actual obligation to pay the attorney.

In *Esch*, the plaintiffs sought an award of contingent attorney fees and costs, pursuant to the Fair Dealership Law which permits an award of "reasonable actual attorneys' fees." The attorney fees had been one fourth of the jury award, an amount far greater than under an hourly rate. The plaintiffs argued that the legislature, in using the phrase "reasonable actual attorneys' fees," intended that the court grant attorney fees in "the actual amount charged or contracted for subject only to a limited determination of reasonableness of the fees." *Id.* at 58. Rejecting this interpretation, the court adopted what it viewed as a more reasonable interpretation of the phrase "reasonable actual attorneys' fees." The court held that the award of attorney fees should be based on the hourly rate of the attorney, assuming reasonableness, and not on the contingent fee, which was the contracted-for fee. This approach, said the court, gave proper meaning to the word "actual," since "contingent fees are not actual fees because they represent something more—a risk factor that an attorney assumes when taking a case

on a contingent fee basis." *Id.* at 59. The court reached this decision despite the fact that the amount awarded was not an amount the plaintiffs were actually obligated to pay.

The *Esch* court also recognized one of the public policy bases for allowing awards of attorney fees—to ensure that attorneys will take cases to enforce and develop the law. Because of financial or other considerations, many individuals turn to public interest law firms and nonprofit legal organizations for representation in cases presenting employment policy issues such as employment discrimination and family leave. Public interest law firms and nonprofit organizations advance the objectives of the statutes by litigating individual claims, protecting employe rights, and encouraging employers to comply with their statutory duties. Representation "without charge" does not mean "without cost." Public interest law firms and nonprofit legal organizations, like the private bar, have limited resources. Public interest and nonprofit groups, like private attorneys who provide *pro bono* services, depend on awards of attorney fees to defray the costs of providing representation free of charge. An award of attorney fees to counsel or an organization for providing legal services without charge to the client does not constitute a windfall or unjust enrichment of the individual litigant or of the organization awarded the fees.

This court, the United States Supreme Court, and courts of other jurisdictions have upheld the award of attorney fees to nonprofit legal organizations for legal representation. *See, e.g., Blum v. Stenson*, 465 U.S. 886 (1984) (award of attorney fees to The Legal Aid Society, a private nonprofit law office representing the prevailing party); *Sheely v. DHSS*, 150 Wis. 2d 320, 442 N.W.2d 1

(1989) (award of attorney fees to petitioner represented by Western Wisconsin Legal Services); *Richland Co. v. DHSS*, 146 Wis. 2d 271, 430 N.W.2d 374 (Ct. App. 1988) (award of attorney fees to petitioner represented by Western Wisconsin Legal Services); *Quine v. Godwin*, 132 Ariz 409, 646 P.2d 294 (1982) (award of attorney fees in action for unpaid wages not inappropriate when plaintiff represented by community legal services); *Folsom v. Butte County Assn of Governments*, 186 Cal. Rptr. 589, 32 Cal. 3d 668, 652 P.2d 437 (1982) (no barrier to award of attorney fees that attorneys are employed by publicly funded legal services organization); *Gardner v. Clark*, 349 Pa. Super. 29, 503 A.2d 8 (1986) (no bar to award of attorney fees that prevailing party was represented by legal services organization which charged no fee). In *Shands v. Castrovinci*, 115 Wis. 2d 352, 361, 340 N.W.2d 506 (1983), we noted "that the attorney fees award is the property of the organization providing the legal services."

Finally, the school district argues that Ruder is not entitled to attorney fees because he was not a necessary party in the judicial proceedings. Ruder initiated the proceedings before DILHR and assumed sole responsibility for representing his interests throughout the DILHR proceedings. It is true that DILHR's chapter 227 defense of its administrative rules and its interpretation of FMLA coincides with Ruder's interests to a large extent. Nevertheless, Ruder has a right to participate in the judicial review proceedings pursuant to sec. 227.53(1)(d), Stats. 1989–90, both to protect his personal interests and to present the unique perspective of an employe covered by FMLA. He is not required to stand to the side and let his hopes ride on DILHR's performance. Thus, Ruder's participation in the court proceed-

ings was neither unwarranted nor redundant. He should be awarded attorney fees.

In summary, we agree with the court of appeals' determination that Ruder is entitled to attorney fees for representation in the DILHR and court proceedings. This position is consistent with the language of the statute, case law governing attorney fees, and sound public policy.

*By the Court.*—The decision of the court of appeals is affirmed.