RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0248p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

JOAN SHERFEL, in her fiduciary capacity as a member of the Benefits Administrative Committee, Plan Administrator of the Nationwide-Sponsored Health and Welfare Employee Benefit Plans; BENEFITS ADMINISTRATIVE COMMITTEE, Plan Administrator of the Nationwide-Sponsored Health and Welfare Employee Benefit Plans; NATIONWIDE MUTUAL INSURANCE COMPANY,

        *Plaintiffs-Appellees*,

      *v.*

REGGIE NEWSON, Secretary, Department of Workforce Development, State of Wisconsin, in his official capacity; JOSEPH HANDRICK, Administrator of the Equal Rights Division, Wisconsin Department of Workforce Development, in his official capacity; J.B. VAN HOLLEN, Attorney General, State of Wisconsin, in his official capacity,

        *Defendants-Appellants*.

No. 12-4285

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-00871—James L. Graham, District Judge.

Argued: October 3, 2013

Decided and Filed: September 30, 2014

Before: COLE, Chief Judge; KETHLEDGE and STRANCH, Circuit Judges.

————————————

## COUNSEL

**ARGUED:** Richard Briles Moriarty, WISCONSIN DEPARTMENT OF JUSTICE, Madison, Wisconsin, for Appellants. Daniel W. Srsic, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellees. **ON BRIEF:** Richard Briles Moriarty, WISCONSIN DEPARTMENT OF

JUSTICE, Madison, Wisconsin, for Appellants. Daniel W. Srsic, LITTLER MENDELSON, P.C., Columbus, Ohio, for Appellees. Sarah C. Crawford, NATIONAL PARTNERSHIP FOR WOMEN & FAMILIES, Washington, D.C., Sherry Leiwant, A BETTER BALANCE: THE WORK AND FAMILY LEGAL CENTER, New York, New York, Jennifer A. Reisch, EQUAL RIGHTS ADVOCATES, San Francisco, California, Richard Saks, 9TO5 NATIONAL ASSOCIATION OF WORKING WOMEN, Milwaukee, Wisconsin, Douglas A. Darch, BAKER & MCKENZIE LLP, CHICAGO, ILLINOIS, for Amici Curiae.

KETHLEDGE, J., delivered the opinion of the court, in which COLE, C.J., joined, and STRANCH, J., joined in part. STRANCH, J. (pp. 13–25), delivered a separate opinion concurring in part and dissenting in part.

--------

**OPINION**

--------

KETHLEDGE, Circuit Judge. ERISA is a statute unique in its preemptive effect. The statute includes an express preemption clause—any state law that "relate[s] to any employee benefit plan" is preempted—which is so broadly worded that the Supreme Court has struggled to draw boundaries around its scope. The statute also preempts state law impliedly, through the doctrine of conflict preemption. That doctrine invalidates state laws to the extent they obstruct the "purposes and objectives" of federal laws; and hence the broader a federal statute's purpose, the broader its implied-preemptive scope. ERISA's purpose is among the broadest, if not the broadest, recognized by the Supreme Court: "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Thus, under ERISA, express and implied preemption are so broad as to overlap, laying down converging fields of fire whose intensity is greatest upon a single point: the one held by a state law that purports to mandate the payment of benefits contrary to the terms of an ERISA plan.

That is the ground on which the Wisconsin Family and Medical Leave Act finds itself here. The terms of Nationwide's plan, whose participants extend across 49 States, allow its administrator to pay "short-term disability" benefits only to Nationwide employees who qualify as short-term disabled as defined by the plan. ERISA then federalizes that limitation, by requiring the administrator to pay benefits only as prescribed in "the documents and instruments

governing the plan[.]" 29 U.S.C. § 1104(a)(1)(D). But the Wisconsin Act, as recently applied to Nationwide by the Wisconsin Department of Workforce Development (the "Workforce Department"), requires the plan administrator to pay short-term disability benefits to certain beneficiaries who undisputedly are *not* short-term disabled as defined by the plan. As to those beneficiaries, therefore, the administrator has two choices: violate the Wisconsin Act, or violate ERISA. The district court held that, under the Supremacy Clause of the federal Constitution, the administrator was required to comply with ERISA rather than the Wisconsin Act. We agree, and affirm.

I.

Nationwide has 32,000 employees across the country. Pursuant to an ERISA plan, the company offers its employees certain income benefits while they take leave from work. The Benefits Administrative Committee administers the plan. Among many other things, the Committee determines whether an employee is entitled to benefits under the plan's terms; and if so, the Committee pays those benefits out of a trust. The plan bars the Committee from paying benefits out of the trust if doing so would violate the plan's terms.

The plan provides three types of benefits: short-term disability ("STD"), long-term disability ("LTD"), and "Your Time" benefits. An employee can receive Your Time benefits for a number of personal reasons, such as vacation or illness. In contrast, to receive STD or LTD benefits, an employee must be "STD Disabled" or "LTD Disabled" as defined by the plan. STD Disabled means "a substantial change in medical or physical condition due to a specific illness that prevents an Eligible Associate from working their current position." Specific rules govern maternity leave. The first five days of paid maternity leave come out of an associate's Your Time benefits. Thereafter, a new mother is considered STD Disabled—and thus entitled to STD benefits—for six weeks following a vaginal delivery, or eight weeks following a cesarean section.

Wisconsin's Family Medical Leave Act requires that employers allow their employees six weeks of unpaid leave following "[t]he birth of an employee's natural child[.]" Wis. Stat. § 103.10(3). Critically for our purposes, the Act's "substitution provision" requires employers to allow an employee to substitute "paid or unpaid leave of any other type provided by the

employer" for the unpaid leave provided by the statute. *Id.* § 103.10(5)(b). As recently applied by the Workforce Department, for example, a Nationwide employee could take the six weeks of paid maternity leave provided by the plan, and then substitute an additional three weeks of STD benefits for the unpaid leave provided by the Wisconsin Act—even if the employee is no longer short-term disabled as defined by the plan. *Id.*

If an employee believes that her employer has violated the Act, she can file a complaint with the Workforce Department, which is empowered to hold a hearing and "take action to remedy the violation, including providing requested family leave or medical leave[.]" *Id.* § 103.10(12). The employee can also bring a state-law civil action in Wisconsin circuit court once the administrative action is done. *Id.* § 103.10(13).

Nationwide faced such a complaint in 2007, after one of its Wisconsin employees, Katharina Gerum, had a baby. She received six weeks of STD benefits in accordance with Nationwide's plan. Gerum then requested an additional period of STD benefits pursuant to the Wisconsin Act's substitution provision. The Committee denied Gerum's request on the ground that she was no longer short-term disabled as defined by the plan. Gerum thereafter filed an administrative complaint with the Workforce Department, claiming that the Wisconsin Act required Nationwide to pay the additional STD benefits that she requested. By that time, the Wisconsin Supreme Court had already held that, in its view, ERISA did not preempt the Wisconsin Act even as applied to the administration of ERISA plans. *See Aurora Med. Grp. v. Dep't of Workforce Dev., Equal Rights Div.*, 612 N.W.2d 646, 654 (Wis. 2000). The Department also noted, in its investigation of Gerum's claim, that a Wisconsin circuit court had specifically held that disability-plan benefits are available for substitution under the Wisconsin Act. *See N.W. Mut. Life Ins. Co. v. Dep't of Indus., Labor, & Human Relations*, No. 94-CV-001022 (Wis. Cir. Ct., Jan. 16, 1995). The Department thus concluded that there was probable cause to believe that Nationwide's denial of STD benefits violated the Wisconsin Act. The Department then commenced an administrative proceeding against Nationwide. Eventually, an administrative law judge held that Nationwide had violated the Wisconsin Act when, per the terms of Nationwide's plan, it declined to pay the additional (*i.e.*, more than the six weeks it had already paid) STD benefits to Gerum. The ALJ thus ordered Nationwide to pay her the additional benefits.

At that point Nationwide sought to clarify its obligations under federal and Wisconsin law. Specifically, Nationwide filed this lawsuit in federal district court in Columbus (where its headquarters is located), seeking a declaration that ERISA preempted the Wisconsin Act to the extent the Act requires payment of STD benefits to employees who are not STD disabled under the terms of Nationwide's plan. Nationwide also sought an injunction to that effect. In a notably thorough opinion, the district court held that, as applied against Nationwide to require the payment of STD benefits contrary to Nationwide's plan, the Wisconsin Act was expressly and impliedly preempted in several different ways. The court therefore granted Nationwide the relief it requested and entered judgment in its favor.

This appeal followed.

## II.

### A.

We begin with the question whether the Wisconsin Act, as applied to Nationwide's plan, is expressly preempted. ERISA's express-preemption provision states that, with certain exceptions not relevant here (*e.g.*, for state laws that regulate insurance), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" 29 U.S.C. § 1144(a). Congress meant for this section "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law[.]" *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990).

A state law "relate[s] to" an ERISA plan, within the meaning of § 1144(a), if the state law "has a connection with or reference to such a plan." *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001) (internal quotation marks omitted). State laws have such a connection or reference—and are therefore preempted—if, among other things, they (i) "mandate[] employee benefit structures[,]" *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 658 (1995); (ii) "interfere[] with nationally uniform plan administration[,]" *Egelhoff*, 532 U.S. at 148; or (iii) create "alternative enforcement mechanisms" for the recovery of benefits provided under an ERISA plan. *Travelers*, 514 U.S. at 658.

The Wisconsin Act, as applied to require the payment of STD benefits contrary to the terms of Nationwide's plan, does all three of these things. First, state laws mandate "employee benefit structures" when, among other things, they require plan administrators to "pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Egelhoff*, 532 U.S. at 147. Indeed, the Supreme Court "ha[s] virtually taken it for granted that state laws which are 'specifically designed to affect employee benefit plans' are preempted under § [1144](a)." *Ingersoll-Rand*, 498 U.S. at 140 (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988)). The Wisconsin Act is undisputedly such a law: it mandates payment of STD benefits to employees who are not STD disabled, contrary to the terms of the plan. Thus, the Act "governs the payment of benefits, a central matter of plan administration[,]" *Egelhoff*, 532 U.S. at 148—and for that reason is expressly preempted as applied here.

Second, the Act interferes with uniform administration of Nationwide's plan in the 49 states where it operates. State laws have this effect when they subject plans "to different legal obligations in different States." *Id.* The Wisconsin Act has that effect here, since it requires the plan administrator to pay benefits (*i.e.*, STD benefits to Wisconsin employees who are not short-term disabled) that the plan itself bars the administrator from paying in other States. The Wisconsin Act therefore "impose[s] precisely the burden that ERISA pre-emption was intended to avoid[,]" *id.* at 150 (internal quotation marks omitted); and for that reason too is expressly preempted as applied here.

Third, the Wisconsin Act creates an alternate enforcement mechanism for obtaining ERISA plan benefits. "Congress intended" ERISA's civil-enforcement provision, 29 U.S.C. § 1132(a), "to be the exclusive remedy for rights guaranteed under ERISA[.]" *Ingersoll-Rand*, 498 U.S. at 144. The Court has explained that "the detailed provisions of § [1132](a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). That balancing "would be completely undermined" if states were free to put additional remedies on one side of the scale. *Id.* Thus, "any state-law cause of action that duplicates, supplements,

or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. Again, the Wisconsin Act undisputedly has that effect here: by its plain terms, § 103.10(12) authorizes employees to file administrative complaints, and § 103.10(13) authorizes employees to file lawsuits in state court, to obtain benefits provided by Nationwide's ERISA plan. Thus, for this reason as well, the Wisconsin Act is expressly preempted as applied here.

The Act is also impliedly preempted as applied here because it conflicts with ERISA. "Conventional conflict pre-emption principles require pre-emption where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (internal quotation marks and ellipses omitted). Here again the Wisconsin Act runs the table of reasons for preemption. The first is impossibility. ERISA "commands that a plan shall 'specify the basis on which payments are made to and from the plan,' § 1102(b)(4), and that the fiduciary shall administer the plan 'in accordance with the documents and instruments governing the plan,' § 1104(a)(1)(D)[.]'" *Egelhoff*, 532 U.S. at 147. But the Wisconsin Act, as applied here, tells the administrator to pay benefits contrary to the terms of the plan, rather than "in accordance" with them. The Act therefore imposes conflicting obligations upon the plan administrator—if the administrator complies with one obligation, it violates the other—and thus the Act is preempted to that extent.

The Act also obstructs the "full purposes and objectives" of ERISA. As shown above, the Act "interferes with nationally uniform plan administration[,]" *id.* at 148, upsets the "careful balanc[e]" struck by ERISA's comprehensive and exclusive civil-enforcement remedy, *Pilot Life*, 481 U.S. at 54, and arrogates to Wisconsin the power to regulate ERISA benefit plans, which Congress intended to be "exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981). Thus, the Wisconsin Act is preempted in no less than five different ways: three of them express, two of them implied—and each of them an independent reason that compels us to hold the Act invalid as applied here.

B.

Wisconsin offers several responses. One is that we should apply a presumption against preemption because, Wisconsin says, its Act regulates family law, which is traditionally an area of state regulation. *See Egelhoff*, 532 U.S. at 151. We have our doubts about that premise. In contrast to *Egelhoff*, which concerned a probate statute, the Wisconsin Act regulates plan benefits *qua* benefits—which assuredly is an area of federal concern. But we need not characterize the Wisconsin Act here. The Supreme Court has "not hesitated to find state family law pre-empted when it conflicts with ERISA or relates to ERISA plans." *Id.* As shown above, the Wisconsin Act does those things in five different ways, so we likewise do not hesitate to find the Act preempted as applied here.

The State's primary argument is that the Act is revived by § 1144(d) of ERISA, which provides in full:

> Nothing in [ERISA] shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 and 1137(b) of this title) or any rule or regulation issued under any such law.

This provision is a curious one to cite in defense of the Wisconsin Act, since it saves only federal laws rather than state ones from preemption. But Wisconsin contends that preemption of the Wisconsin Act, as applied here, would impair the Federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.* That assertion too is curious, since the FMLA undisputedly does not mandate the substitution of employer-provided leave benefits the way the Wisconsin Act does. Thus, the Wisconsin Act prohibits what the FMLA permits (*i.e.*, non-substitution of employer-provided leave benefits); and the Supreme Court has already told us, in yet another ERISA preemption case, that "[w]e fail to see how federal law would be impaired by pre-emption of a state law prohibiting conduct that federal law permitted." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103-104 (1983).

Nor does the FMLA's own savings clause have any application here, since that clause reiterates four times that it saves state law only from preemption by the FMLA itself. The clause provides in full: "Nothing in this Act or any amendment made by this Act shall be construed to supersede any provision of any State or local law that provides greater family or medical leave

rights than the rights established under this Act or any amendment made by this Act." 29 U.S.C. § 2651(b). The term "this Act" is as unambiguous as any in the United States Code; and here too the Supreme Court has already told us that "this Act," as used in a savings clause, does not "alter the pre-emptive effect" of any Act but the one in which it appears. *United States v. Locke*, 529 U.S. 89, 106 (2000).

Nor, contrary to Wisconsin's suggestion, does § 2652(b) of the FMLA have any application here. That provision provides in full: "The rights established for employees under *this Act* or any amendment made by *this Act* shall not be diminished by any collective bargaining agreement or any employment benefit program or plan." (Emphasis added). Again, "this Act" refers unambiguously to the FMLA, not the Wisconsin Act; and thus § 2652(b) does nothing to save the Wisconsin Act from diminution. Wisconsin's argument that federal law somehow saves the Wisconsin Act from preemption, therefore, has no basis in any provision of the United States Code.

Wisconsin thus argues that its Act is saved by legislative history alone—namely, two sentences from a Senate Report and a putative colloquy between three Senators. That history, Wisconsin says, shows that one purpose of the FMLA was to encourage states to mandate benefits more generous than those mandated by the FMLA itself; and preemption of the Wisconsin Act as applied here would "impair" that purpose within the meaning of § 1144(d) of ERISA.

This argument fails for a host of reasons. The first is that the FMLA actually recites its purposes—and this one is not among them. *See* 29 U.S.C. § 2601(b). The second reason is pedestrian: as the Supreme Court reminded us in a preemption case just two Terms ago, and "as [the Court] ha[s] said before, Congress's 'authoritative statement is the statutory text, not the legislative history.'" *Chamber of Commerce v. Whiting*, 131 S. Ct. 1968, 1980 (2011) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005)). The exception, of course, is where the legislative history helps to explain the meaning and purpose of a provision whose text is genuinely ambiguous. *See Allapattah*, 545 U.S. at 567. As shown above, however, there is no ambiguity here; and otherwise the text of the FMLA does not establish the statutory value that Wisconsin asks us to enforce.

The third reason has to do with the quality of the materials themselves.  The colloquy is purportedly a 1993 exchange between Senators Feingold and Kohl (both representing Wisconsin at the time), on the one hand, and Senator Dodd (the Senate sponsor of the FMLA), on the other.  The Wisconsin Senators each ask, "[i]s it the intent of the sponsors of" the FMLA that ERISA "shall not" preempt the substitution provision of the Wisconsin Act; and Senator Dodd in each instance duly answers yes.  139 Cong. Rec. 2254 (1993).  But the idea that this colloquy ever passed the lips of any Senator is an obvious fiction.  Colloquies of this sort get inserted into the Congressional Record all the time, usually at the request of a lobbyist; and here virtually the same colloquy, with verbatim much of the same stilted phrasing, appeared in the Congressional Record two years before, in connection with a predecessor bill that the President vetoed.  *See* 137 Cong. Rec. 25,019-20 (1991).  The principal difference between the two colloquies is that the later one assigns to Senator Feingold (who had just been elected) some of the questions that Senator Kohl is shown to ask in the earlier one.  Thus, from the 1993 colloquy, one can reasonably conclude, at most, that the Wisconsin Senators sought to protect their State's Act from preemption by ERISA, and that Senator Dodd was willing to oblige by lending his name to the colloquy—though not, apparently, by amending the FMLA to that effect.  But the idea that this colloquy reflects the intent of Congress as a whole is as fictional as the colloquy itself.

Wisconsin's other piece of legislative history is the Senate Committee Report for the FMLA, which contains two sentences that Wisconsin flags for us here.  One is that "[s]ection 401(b) [§2651(b) of the bill as enacted] makes it clear that state and local laws providing greater leave rights than those provided in [the FMLA] are not preempted by the bill or any other federal law."  S. Rep. No. 103-3, at 38 (1993).  But § 2651(b) does not say anything about preemption by other federal statutes, since it reiterates four times that it saves state law only from preemption by the FMLA ("this Act") itself.  The House Report agrees with us:  it includes the same sentence without the reference to "any other federal law[,]" H.R. Rep. No. 103-8(I), at 50 (1993)—which is to say that the House Report reads § 2651(b) to mean what it says.

The other sentence from the Senate Report (which the House Report omits, to its credit) is that "[s]ection 401(b) also clarifies that state family leave laws at least as generous as that [*sic*] provided in [the FMLA] (including leave laws that provide continuation of health insurance or

other benefits, and paid leave), are not preempted by ERISA, or any other federal law." S. Rep. No. 103-3, at 38. As shown above, however, § 2651(b) says nothing about ERISA or "any other federal law"; instead § 2651(b) refers only to the FMLA. This sentence from the Report thus purports to rewrite § 2651(b) rather than clarify it. The Supreme Court has warned us against relying upon precisely this kind of legislative history. *See Allapattah*, 545 U.S. at 568 ("committee reports, which are not themselves subject to the [bicameralism and presentment] requirements of Article I, may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text").

Wisconsin's reliance on legislative history is also misplaced for a fourth reason: it offers no answer to the reasons the Wisconsin Act is conflict-preempted as applied here. So applied, as shown above, the Wisconsin Act imposes conflicting obligations on the Nationwide plan administrator, interferes with nationally uniform plan administration, renders ERISA's exclusive enforcement remedy non-exclusive, and injects state law into an area (regulation of ERISA benefit plans) that the Supreme Court has said is "exclusively a federal concern." *Davila*, 542 U.S. at 208 (internal quotation marks omitted). Thus, the Supreme Court's observations in another preemption case are apposite here:

> Why, in any event, would Congress not have wanted ordinary pre-emption principles to apply where an actual conflict with a federal objective is at stake? Some such principle is needed. In its absence, state law could impose legal duties that would conflict directly with federal regulatory mandates . . . . To the extent that such an interpretation of the saving provision reads into a particular federal law toleration of a conflict that those principles would otherwise forbid, it permits that law to defeat its own objectives, or potentially, as the Court has put it before, to "destroy itself."

*Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 871-72 (2000) (quoting *AT&T Co. v. Cent. Office Tel., Inc.*, 524 U.S. 214, 228 (1998)). Our conclusion is the same as the Supreme Court's in *Geier*: the federal statute does not tolerate this sort of conflict with state law.

We have no basis, therefore, to conclude that preemption of the Wisconsin Act, as applied here, would impair the FMLA. And we have every reason to conclude that non-

preemption would impair ERISA—notably § 1144(a) and the statute's objectives as set forth in literally dozens of Supreme Court cases. The lawful result in this case is to hold the Wisconsin Act preempted to the extent it requires Nationwide's administrator to pay STD benefits contrary to the terms of Nationwide's plan.

C.

That conclusion is dispositive of this appeal: the district court's balancing of the four-factor test for injunctive relief was otherwise reasonable, *see Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012); and the defendants are not entitled to immunity under the Eleventh Amendment because the plaintiffs requested, and the district court awarded, only prospective, injunctive relief. *See Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013).

\* \* \*

The district court's judgment is affirmed.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

STRANCH, Circuit Judge, concurring in part and dissenting in part. Congress understood that the Employee Retirement Income Security Act (ERISA), the Family and Medical Leave Act (FMLA), and similar state leave laws like the Wisconsin Family and Medical Leave Act (WFMLA) serve separate but complementary roles in governing employment leave. By honoring the distinction between accrued paid leave and other types of non-accrued benefits, like short-term and long-term disability benefits, these federal and state statutes have co-existed for nearly twenty-five years, each serving its particular purpose. The distinctions I draw here preserve that balance and allow these intertwined statutes to continue to serve their separate functions.

The ERISA preemption claim brought is based on a common type of ERISA plan—one that includes a number of different benefits within one plan—here including Your Time Benefits (covering vacation, sick and personal time), short-term disability (STD) and long-term disability (LTD). The challenge before us is specifically to substitution of unpaid WFMLA leave with paid STD benefits. The challenge, therefore, presents a narrow issue—whether ERISA preempts the substitution of unpaid WFMLA leave with STD benefits under the employer's ERISA Plan when a requesting employee no longer meets the Plan's definition of disability. The issue before us thus arises at the intersection of Wisconsin state law and ERISA.

Viewing this case through the narrow lens presented, I would hold that ERISA does not expressly preempt the WFMLA substitution provision because that provision does not relate to an ERISA plan by reference to, or connection with, the plan. Further, the substitution provision is not conflict-preempted because the statute does not establish a state regulation that makes it impossible for Nationwide to comply with ERISA law and state law at the same time. To the extent a Wisconsin employee seeks to utilize the administrative process of the Wisconsin Department of Workforce Development to obtain STD benefits under Nationwide's ERISA Plan, however, that state process is preempted under ERISA because it establishes an alternative enforcement mechanism barred by ERISA. On this, I concur with the majority.

To explain where I disagree with the majority opinion, I must begin with the WFMLA and describe how Wisconsin appellate courts have interpreted that statute. Those courts' explanations of the statutory mechanism shine much-needed light on the ERISA preemption analysis.

## A. Substitution of Leave under the WMFLA

Wisconsin employees may take an unpaid leave of absence for the birth of a child. Wis. Stat. § 103.10(3)(b)(1) & (5)(a). The WFMLA specifically permits an employer to provide "employees with rights to family leave . . . which are more generous to the employee," § 103.10(2)(a), and in addition "[a]n employee may substitute, for portions of family leave[,] . . . paid or unpaid leave of any other type provided by the employer," § 103.10(5)(b). The Wisconsin Department of Workforce Development promulgated a regulation to clarify what the statutory substitution provision means by "leave of any other type provided by the employer." The regulation provides: "At the option of the employee, an employee entitled to family . . . leave under the act may substitute, for any leave requested under the act, any other paid or unpaid leave *which has accrued to the employee*." Wis. Admin. Code DWD § 225.03(1) (emphasis added).

We are not lacking in guidance as to what type of leave provided by the employer is authorized for substitution by the WFMLA. More than twenty years ago, the Wisconsin Supreme Court explained the meaning of the phrase "leave which has accrued to the employee." In *Richland School District v. Department of Industry, Labor, and Human Relations*, 498 N.W.2d 826, 832 (Wis. 1993), the court concluded that the state regulation properly interpreted the statutory phrase "leave . . . provided by the employer" to mean "any type of leave that has *accrued*" to the employee. *Id.* at 832 & n.7, 835. Only the kinds of leave that an employee accumulates over time "are available for substitution." *Id.* at 832. "Leave which is indefinite or which cannot be quantified at the time of the FMLA leave request is not 'leave . . . provided by the employer' under [the] FMLA." *Id.* The Wisconsin Supreme Court has thus distinguished "indefinite, incalculable leave" from leave that "accrues into specified, calculable amounts of time." *Id.* Only the latter may be substituted for leave requested under the WFMLA.

The employee in *Richland School District* asked to substitute eighteen calculable days that had accrued to him under a collective bargaining agreement (CBA). *Id.* at 828, 832. Although the school district argued that the CBA's conditions for using the leave were not satisfied, the Wisconsin Supreme Court concluded that the leave was sufficiently definite and quantifiable to be substituted for unpaid WFMLA leave, specifically noting that the employee "was not asking to substitute any form of non-accrued, discretionary or contingent leave time which the school district might give him upon request." *Id.* at 832–33. The court emphasized that the Wisconsin legislature intended to restrict substitution under the WFMLA to circumstances in which the employee "has accrued reimbursable leave." *Id.* at 836. Thus, § 103.10(5)(b) "increases the opportunities for a state employe[e] to use existing accrued paid leave, as opposed to creating additional paid leave." *Id.*

In *Miller Brewing Company v. Department of Industry, Labor and Human Relations*, 563 N.W.2d 460, 462 (Wis. 1997), the Wisconsin Supreme Court outlined what an employee must prove to establish a violation of the WFMLA substitution provision, § 103.10(5)(b). A plaintiff must show that: "(1) she was covered by the FMLA at the time she requested leave; (2) she requested a substitution for family leave; (3) [the employer] provided the type of leave requested; (4) *the substituted leave had accrued to her*; and (5) [the employer] denied the substituted leave." *Id.* (emphasis added). Echoing *Richland School District*, the court said that "[a]n employer must provide leave that is definite and quantifiable in order for such leave to be available for substitution under the FMLA." *Id.* at 462 n.6. Because a CBA granted the plaintiff 952 hours of paid reserve sick leave that was "clearly definite and quantifiable," the court ruled that it did not need to "interpret the CBA in order to determine that [her] paid leave had accrued to her and was the type of leave available for substitution under the FMLA." *Id.* at 467. Accordingly, the plaintiff's claim was not preempted by § 301 of the Labor Management Relations Act. *Id.*

In *Kraft Foods, Inc. v. Wisconsin Department of Workforce Development*, 625 N.W.2d 658, 662 (Wis. Ct. App. 2001), the issue was whether a sick leave benefit under a CBA constituted accrued paid leave that could be substituted for family leave under the WFMLA substitution provision, § 103.10(5)(b). The state agency determined that leave is accrued within

the meaning of Wis. Admin. Code DWD § 225.03 if "it arises from a contract, is specified and quantifiable, has a 'draw-down' feature, and is the type of leave that an employee is allowed to accumulate over time." *Kraft Foods, Inc.*, 625 N.W.2d at 663. The CBA's sick leave benefit met the criteria, so the agency ruled that the claimant could substitute accrued sick leave under the CBA for unpaid WFMLA leave. *Id.*

The Wisconsin Court of Appeals concluded that the agency reasonably interpreted and applied the term "accrued," noting that the amount of sick leave was specified and quantifiable, the benefit had a draw-down feature, and the sick leave accumulated over time. *Id.* at 663–64. Significantly, the court observed that, "[a]lthough the sick leave benefit in the parties' collective bargaining agreement may resemble a disability insurance policy, we agree with the department that any such resemblance is irrelevant. The issue is whether the sick leave benefit meets the requirements as a substitute leave under the WFMLA, and, as we have discussed, the department reasonably concluded that it does." *Id.* at 664 (footnote omitted). The court pointed to the accumulation of leave over time "by renewing annually and increasing with an employee's seniority." *Id.* The fact that an employee had to be sick for several days before receiving paid sick leave benefits did not render the benefit "indefinite" or "incalculable." *Id.*

Turning to the issue before us, the Wisconsin appellate courts have never held that the substitution provision of the WFMLA allows an employee to replace unpaid family leave with STD benefits under an employer's ERISA plan if the employee does not meet the plan's definition of disability. In light of the governing precedents, it is doubtful that the Wisconsin appellate courts would so hold because STD benefits do not satisfy their requirements for the type of leave that may be substituted. *See Richland Sch. Dist.*, 498 N.W.2d at 832; *Kraft Foods, Inc.*, 625 N.W.2d at 664. In contrast to definite and quantifiable vacation days and sick leave, STD benefits are discretionary and contingent depending on the existence and continuation of an employee's physical or mental disability. STD benefits may become available under Nationwide's ERISA Plan if the employee satisfies the definition of disability set forth in the Plan, but STD benefits generally do not accumulate over time, they are not based on an employee's seniority, and they do not have a "draw-down" feature. STD benefits simply do not

"accrue" to the employee as the Wisconsin Supreme Court understood that term in *Richland School District* and throughout its case law.

The WFMLA, as interpreted by Wisconsin courts, operates in much the same way as the federal FMLA. The WFMLA predated the passage of the FMLA and is fully consistent with congressional intent at the time the FMLA was enacted into law. The FMLA generally allows eligible employees who are employed by covered employers to request up to twelve work weeks of unpaid leave each calendar year for reasons specified in the statute, one of which is the birth of the employee's child. 29 U.S.C. § 2612(a)(1)(A). Although leave under the FMLA is unpaid leave, Congress provided that "[n]othing in [the FMLA] . . . shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements" of the FMLA. 29 U.S.C. § 2653. This point was sufficiently important for Congress to place it within its own statutory section rather than list it in 29 U.S.C. § 2601(b) as one of the purposes of the FMLA.

To satisfy the requirements of the FMLA, employers must "comply with any collective bargaining agreement or any employment benefit program or plan that provides greater family or medical leave rights to employees than the rights established" under the FMLA, but an employee's FMLA rights "shall not be diminished by any collective bargaining agreement or any employment benefit program or plan." 29 U.S.C. § 2652. In consonance with §§ 2652 and 2653, Nationwide adopted a maternity leave policy more generous than the unpaid leave provisions of either the FMLA or the WFMLA. Nationwide provides a new mother with six or eight weeks of paid leave for the birth of a child.

The majority errs in stating that the FMLA "undisputedly does not mandate the substitution of employer-provided leave benefits the way the Wisconsin Act does." Maj. Op. at 9. The WFMLA does not "mandate" substitution; instead, the statute expresses in permissive terms that "[a]n employee *may* substitute, for portions of family leave[,] . . . paid or unpaid leave of any other type provided by the employer." Wis. Stat. § 103.10(5)(b) (emphasis added). The statute and governing regulations allow the employee to elect substitution of any other paid or unpaid leave that has accrued to the employee, but it does not require such substitution.

The FMLA's substitution provision is arguably less protective of the employee than the WFMLA's substitution provision because Congress provided that "[a]n eligible employee may elect, *or an employer may require the employee*, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided [for the birth of a child] for any part of the 12-week period" of leave. 29 U.S.C. § 2612(d)(2)(A) (emphasis added). The WFMLA substitution provision does not allow employers to require employees to substitute accrued paid leave for unpaid leave under the WFMLA. Wis. Stat. § 103.10(5)(b).

The WFMLA substitution provision also creates greater employee leave rights than those under the FMLA because the employee may elect to substitute "paid or unpaid leave of any other type provided by the employer." *Aurora Med. Grp., v. Dep't of Workforce Dev.*, 612 N.W.2d 646, 650, 657 (Wis. 2000). As I previously explained, however, the Wisconsin courts have defined the type of leave that may be substituted under the WFMLA provision as definite, quantifiable leave that accrues to the employee over time and has a draw-down feature. *Richland Sch. Dist.*, 498 N.W.2d at 832; *Kraft Foods, Inc.*, 625 N.W.2d at 664. This characterization of the type of leave that may be substituted under the WFMLA closely matches the FMLA's description of leave that may be substituted: "accrued paid vacation leave, personal leave, or family leave of the employee." 29 U.S.C. § 2612(d)(2)(A). STD benefits do not fall within the federal or the state characterization.

These federal and state family leave statutes intersect with ERISA and with one another but each statute serves a particular purpose, and they have coexisted for a quarter of a century. Congress provided in ERISA that "[n]othing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). In determining whether a construction of ERISA "impairs" the operation of another federal statute, like the later-enacted FMLA, the question is whether that construction "would frustrate the goal" of the second law. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102 (1983); *see also Humana Inc. v. Forsyth*, 525 U.S. 299, 311 (1999) ("*Shaw* thus supports the view that to 'impair' a law is to hinder its operation or 'frustrate [a] goal' of that law"). "Congress is presumed to enact legislation with knowledge of the law and a newly-enacted statute is presumed to be harmonious with existing law and judicial concepts." *Raney v. Fed. Bureau of Prisons*, 222

F.3d 927, 932 (Fed. Cir. 2000) (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–98 (1979)). Thus, when Congress enacted the FMLA, we must presume that Congress intended for its new statute to exist harmoniously with the pre-existing ERISA statute and with the WFMLA. Consequently, to the extent possible, we must interpret and harmonize these statutes and accompanying case law to effectuate congressional and state intent.

**B. ERISA Preemption**

In light of the complementary pathways that have been maintained for many years in the case law flowing from federal and state family leave statutes and ERISA, I turn to ERISA preemption in our particular context.

A primary concern of Congress in enacting ERISA was "the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds." *Mass. v. Morash*, 490 U.S. 107, 115 (1989). To alleviate this concern, Congress "established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." *Id.* Ordinary benefits paid to employees like wages (for example, vacation leave), that are "typically fixed, due at known times, and do not depend on contingencies outside the employee's control . . . present none of the risks that ERISA is intended to address," and these kinds of employee benefits have traditionally been regulated by the States. *Id.* at 115, 119. "Absent any indication that Congress intended" ERISA to cover routine leave payments, the Supreme Court has been "reluctant to so significantly interfere with 'the separate spheres of governmental authority preserved in our federalist system.'" *Id.* at 119 (quoted case omitted).

ERISA expressly preempts "any and all State laws insofar as they may now or hereafter relate to an employee benefit plan." 29 U.S.C. § 1144(a). The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). The purpose of ERISA preemption is to avoid conflicting federal and state regulation in the creation of nationally uniform administration of employee benefit plans. *Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 390 (6th Cir. 2009).

Although the preemption provision, § 1144(a), may appear to be clear and unambiguous, it is "not a model of legislative drafting." *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 99 (1993) (internal quotation marks omitted).  And while the breadth of the "relate to" clause is apparent, "infinite relations cannot be the measure of pre-emption." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995).  We must "look . . . to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive." *Id.*  A "law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97.  "Where a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . that 'reference' will result in pre-emption." *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 325 (1997).  But Congress did not intend that ERISA would preempt a state law that another federal law encourages, *see Travelers Inc. Co.*, 514 U.S. at 665–66, because such preemption would effectively impair the federal law in violation of  29 U.S.C. § 1144(d).  *See Shaw*, 463 U.S. at 102.  *See also Metro. Life Ins. Co. v. Mass.*, 471 U.S. 724, 744 n.21 (1985).

The WFMLA substitution provision does not act immediately or exclusively upon Nationwide's ERISA plan for STD benefits, nor is the existence of such an ERISA plan essential to the statute's operation.  *See Dillingham Constr., N.A., Inc.*, 519 U.S. at 325.  The substitution provision states only that a Wisconsin employee "may substitute, for portions of family leave[,] . . . paid or unpaid leave of any other type provided by the employer."  Wis. Stat. § 103.10(5)(b).  No reference is made in the statute to ERISA plans that provide STD benefits, nor must an ERISA plan for STD benefits exist for the statute to operate.  As the district court recognized, the substitution provision applies to both ERISA and non-ERISA benefit plans, and under *Dillingham Construction*, the provision does not "refer to" ERISA plans.  *Sherfel v. Gassman*, 899 F. Supp. 2d 676, 698 (S.D. Ohio 2012).

My colleagues rely heavily on *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 147 (2001), but *Egelhoff* is distinct from the case before us.  There, the Supreme Court held that ERISA preempted a state statute because "[t]he statute binds ERISA plan administrators to a

particular choice of rules for determining beneficiary status. The administrators must pay benefits to the beneficiaries chosen by state law, rather than to those identified in the plan documents." *Id.* Understandably, the Supreme Court ruled in that context that the state statute "implicates an area of core ERISA concern." *Id.* But here, the Wisconsin substitution provision does not have the same connection to Nationwide's ERISA plan as the state statute had to the plan at issue in *Egelhoff*.

The law may be preempted by ERISA if it has a "connection with" ERISA plans. *Dillingham Constr.*, 519 U.S. at 325. This inquiry requires two showings: "(1) the law at issue must mandate (or effectively mandate) something, and (2) that mandate must fall within the area that Congress intended ERISA to control exclusively." *Assoc. Builders & Contractors v. Mich. Dep't of Labor and Economic Growth*, 543 F.3d 275, 281 (6th Cir. 2008). Here, Nationwide has not proved that the WFMLA's substitution provision mandates any action in connection with the STD Program in Nationwide's ERISA Plan or that such mandate falls within the area that Congress intended ERISA to control exclusively. First, the substitution provision speaks in permissive language; second, it authorizes substitution with paid or unpaid leave that has accrued to the employee as defined by Wisconsin courts. Thus, contrary to the conclusions of the majority and the district court, the substitution provision of the WFMLA does not "(1) mandate[] or effectively mandate[] the substitution and payment of STD benefits (2) which are provided pursuant to an ERISA plan, the payment of plan benefits being within the area that Congress intended ERISA to control exclusively." *Sherfel*, 899 F. Supp. 2d at 698. The substitution of accrued paid leave for unpaid WFMLA leave is the type of leave with which ERISA is not concerned. *See Morash*, 490 U.S. at 115, 119. Therefore, the substitution provision does not, as the majority and the district court hold, interfere with nationally uniform plan administration because the statute itself does nothing to interfere with national uniform administration of Nationwide's ERISA Plan. I do not find express preemption applicable.

ERISA preemption may also be implied if compliance with both federal and state regulations is impossible or if the state law is "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (internal quotation marks omitted). But it is not impossible for Nationwide to comply with the

WFMLA substitution provision and federal ERISA law at the same time. The substitution provision does not mention ERISA plans or purport to control an employer's STD program for employees. Importantly, no Wisconsin appellate court has ever held that the substitution provision may be applied to force an ERISA STD benefits plan to provide paid disability benefits in lieu of unpaid leave under the WFMLA.

Nationwide contends that the decision of the administrative law judge (ALJ) in the Gerum case demonstrates the impossibility of Nationwide's compliance with both ERISA law and the WFMLA, but Nationwide chose to settle Gerum's claim and that controversy is no longer pending. Even if the ALJ's unappealed decision remains on the books, the trial proof established that the decision is not binding on any other Wisconsin ALJs, and any Wisconsin appellate court likely would give no deference to the ALJ's statutory interpretation because the decision concerned a first-impression issue of law. *See Volvo Trucks N. Am. v. Wis. Dep't of Transp.*, 779 N.W.2d 423, 428 (Wis. 2010).

Contrary to some of the arguments before us, the Wisconsin Supreme Court's decision in *Aurora Medical Group*, while instructive, does not settle this matter. *Aurora* held that ERISA did not preempt the WFMLA substitution provision where an employee substituted accrued paid sick leave for unpaid statutory family leave. 612 N.W.2d at 650–52, 657. The parties stipulated in that case that Aurora's Sick Pay Plan was a welfare benefit plan within the meaning of ERISA, but the Wisconsin Supreme Court declined to render any opinion about whether Aurora's sick leave plan was actually an ERISA plan. *Id.* at 650 n.6. *Aurora* certainly did not address the issue presented here of whether ERISA preempts the WFMLA substitution provision where the employee wishes to substitute discretionary and contingent ERISA Plan STD benefits for unpaid WFMLA leave.

Neither the WFMLA substitution provision itself nor any binding Wisconsin state decision presently requires Nationwide to pay STD Plan benefits to one of its employees in substitution of unpaid WFMLA leave. Accordingly, conflict preemption is not required to alleviate existing and conflicting obligations.

I do agree, however, that a Wisconsin employee's attempt to utilize the state administrative process to obtain the payment of STD benefits under Nationwide's ERISA Plan as

a substitute for unpaid WFMLA leave is preempted. Congress intended for ERISA's comprehensive civil enforcement scheme, 29 U.S.C. § 1132(a), to serve as the exclusive means for enforcing rights under ERISA, thus preempting alternative enforcement mechanisms. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). *See also Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) ("[a]ny state-law cause of action that duplicates, supplements, or supplants ERISA's civil enforcement remedy conflicts with clear congressional intent to make that remedy exclusive, and is therefore pre-empted"). Nationwide's STD benefits are controlled by specific ERISA Plan terms, definitions, and laws. As I have previously shown, STD benefits do not appear to be similar in kind to the definite, quantifiable leave accrued to an employee over time that Wisconsin has said may be substituted for unpaid family leave. The Plan's STD benefits are more like the "non-accrued, discretionary or contingent leave time" that Wisconsin case law differentiates from substitutable time. S*ee Richland Sch. Dist.*, 498 N.W.2d at 832. No Wisconsin court has held that such leave may be substituted.

Further, an employee who requests payment of STD benefits under Nationwide's ERISA Plan seeks "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Congress intended that ERISA's civil enforcement statute would provide the sole remedy for an employee to obtain STD benefits under an ERISA Plan. *See Davila*, 542 U.S. at 210. Characterizing STD benefits provided under an ERISA Plan as a form of discretionary, contingent leave that is regulated by ERISA law does not impair the substitution provisions of the FMLA or the WFMLA because those statutes govern only accrued paid leave. 29 U.S.C. § 2612(d)(2)(A); Wis. Stat. § 103.10(5)(b); Wis. Admin. Code DWD § 225.03(1); *Richland Sch. Dist.*, 498 N.W.2d at 832.

Because Congress expressly provided that any employee's cause of action to recover non-accrued ERISA STD benefits must be pursued under § 1132(a)(1)(B), alternative state enforcement mechanisms are preempted. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 702 (6th Cir. 2005). To this limited extent, I would hold that Nationwide is entitled to declaratory relief and fiduciary instruction.

If Wisconsin wishes to require employers to pay disability benefits in substitution for unpaid family leave, moreover, the method to accomplish that goal is not to require employers to

alter their existing ERISA plans. Instead, the State may require employers to provide benefits through a separately administered disability plan, one that is not covered by ERISA but that is "maintained solely for the purpose of complying" with state "disability insurance laws." 29 U.S.C. § 1003(b)(3); *Shaw*, 463 U.S. at 108 ("A State may require an employer to maintain a disability plan complying with state law as a separate administrative unit" and such a plan "would be exempt" from ERISA coverage under § 1003(b)(3)). As the Supreme Court explained, "[i]f the State is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply." *Id.* But it does not appear that the WFMLA substitution provision, as currently drafted, qualifies as such a "disability insurance law."

## C.  Permanent Injunctive Relief

Finally, I turn to the permanent injunction entered by the district court. Nationwide did not prove continuing irreparable injury to warrant injunctive relief against Wisconsin state officials charged with implementing the WFMLA. I do not agree with the district court that Nationwide established through proof that it is "at considerable risk of having to defend against WFMLA administrative claims for Plan STD benefits based on the WFMLA substitution provision." *Sherfel*, 899 F. Supp. 2d at 708. There is no pending, active case against Nationwide raising the issue of substitution of STD benefits for unpaid WFMLA leave. Moreover, Nationwide's proof provided only the speculation of a witness that this issue "conceivably . . . is an ongoing problem," R. 111 Page ID 2275, and the ALJ decision issued in Gerum's case was not appealed and is non-binding under the proof and Wisconsin law. *See Kallstrom v. City of Columbus*, 136 F.3d 1055, 1068 (6th Cir. 1998) ("Injunctive relief is a discretionary remedy which courts traditionally abstain from providing unless the controversy is ripe for judicial resolution.") Because Nationwide fell short in its proof of continuing irreparable harm, I would hold that the injunction cannot stand.

## D. Conclusion

In summary, Wisconsin law permits employees to substitute definite, calculable leave that has accrued to them, such as vacation or sick leave, for unpaid WFMLA leave. The Wisconsin appellate courts have never interpreted the WFMLA to allow or require the

substitution of ERISA Plan STD benefits for unpaid family leave. ERISA does not expressly preempt the WFMLA substitution provision because that provision does not relate to Nationwide's ERISA Plan—it does not refer to, or have a connection with, the Plan. Because the WFMLA substitution provision does not establish a state regulation that makes it impossible for Nationwide to comply with ERISA law and state law at the same time, the substitution provision is not conflict-preempted. The substitution provision is preempted, however, to the extent that a Wisconsin employee seeks to utilize the state administrative process to obtain STD benefits under Nationwide's existing ERISA Plan because that state process establishes an alternative enforcement mechanism barred by ERISA. Nationwide is entitled to limited declaratory relief on this ground. Because Nationwide did not prove continuing irreparable harm, however, injunctive relief is unwarranted.

My analysis would lead me to affirm in part and reverse in part the district court's grant of declaratory relief and fiduciary instructions. I would vacate the permanent injunction and remand the case to the district court for further proceedings. I therefore respectfully concur in part with and dissent in part from the majority opinion.